UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| MARY DEFOE, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Case No. 4:15-CV-01321-AGF |
| CAROLYN COLVIN, Acting Commissioner of Social Security, | ) | |
| Defendant. | ) | |

# MEMORANDUM AND ORDER

This action is before this Court for judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff Mary Defoe was not disabled, and, thus, not entitled to disability insurance benefits[1] under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.* For the reasons set forth below, the decision of the Commissioner will be affirmed.

## BACKGROUND

Plaintiff, who was born on May 7, 1956, filed her applications for disability insurance benefits in August 2012, alleging disability beginning March 9, 2011, due to atherosclerosis, bipolar disorder, manic depression, fibromyalgia, hyperlipidemia, heart disease, angina, weakness, difficulty walking distances, difficulty lifting over 15 pounds,

---

[1] Plaintiff's Complaint also briefly mentions the denial of widow's benefits, but her Brief suggests that her action arises solely under 42 U.S.C. § 405(g) for judicial review of the denial of disability benefits, and only asserts arguments related to Plaintiff's purported disability. Thus, the Court dismisses Plaintiff's widow's benefits claim without prejudice except to the extent it is impacted by a disability ruling.

and sleep disturbance. (Tr. 95.) Plaintiff had filed prior applications for disability benefits in 1992, 2003, 2004, and 2006, all of which were denied. (Tr. 223-24.) After Plaintiff's latest application was denied at the initial administrative level, she requested a hearing before an Administrative Law Judge ("ALJ"). Such a hearing was held on March 11, 2014. By decision dated June 11, 2014, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform certain jobs that were available in the national economy, and was thus not disabled under the Act. Plaintiff's request for review by the Appeals Council of the Social Security Administration was denied on July 8, 2015. Plaintiff has thus exhausted all administrative remedies, and the ALJ's decision stands as the final agency action now under review. On application for judicial review, Plaintiff makes arguments only with regard to the alleged impairment of hypertension, and argues that the ALJ erred by failing to find it a severe and disabling impairment. Because Plaintiff only challenges the ALJ's decision with regard to hypertension, the Court will limit its discussion of the record to those portions relevant to Plaintiff's argument.

**Agency Forms**

In Plaintiff's disability report (Form SSA-3368), Plaintiff self-reported that she was first diagnosed as a manic depressive in 1974, and has been hospitalized more than a dozen times in relation to her psychiatric limitations, which also include bipolar disorder. With regard to physical impairments, Plaintiff reported suffering from atherosclerosis, fibromyalgia, hyperlipidemia, heart disease, angina, weakness, numbness, difficulty walking, numbness, and sleep disturbance. (Tr. 237.) Notably, Plaintiff did not list

2

hypertension as an impairment in her disability report.

In her function report, Plaintiff reported that she rises at 5:30 a.m. most mornings, performs household cleaning and cooking, and applies for jobs that are nonphysical in nature and are located within fifteen miles of her home. She also does laundry and other light chores on a regular basis, including vacuuming, washing dishes, and dusting. She regularly shops for groceries and other household necessities, as well as clothes, gifts, and books, and can drive. She shops usually with a friend, and for about one and a half hours per week. However, she does not leave the house very often, and notes a limited attention span that "varies." (Tr. 243.)

Plaintiff noted her tendency to forget instructions. She described the pain caused by her angina, and her tendency to quickly become winded by exertion of any kind. She stated that she experiences pain from fibromyalgia most days. Finally, she wrote that she must take a sleeping pill to sleep, and that she must take lithium for her depression and manic-depressive disorder, which can occasionally affect her even while she is taking her prescribed medicine.

On September 18, 2012, state-agency psychological consultant Kyle DeVore, Ph.D., completed an analysis in the initial level Disability Determination Explanation issued by the Social Security Administration. In that analysis, Dr. DeVore listed Plaintiff's ischemic heart disease and essential hypertension as the primary and secondary impairment diagnoses, respectively, and he identified these impairments as severe. He also listed Plaintiff's affective disorders as nonsevere impairments, and explained his

3

reasons for this determination. (Tr. 98, 113.) Dr. DeVore signed the Disability Determination Explanation immediately following the listed classification of ischemic heart disease and essential hypertension as severe impairments, but the form as a whole bore the signature of single decision-maker ("SDM") Ron Seligman, who completed the Disability Determination Explanation.

**Medical Evidence**

Plaintiff's primary care physician was Carl Peters, M.D., from February through May 2011. During visits with Dr. Peters, Plaintiff was asymptomatic with regard to her heart condition, and her bipolar disorder and insomnia were stable. She reported acute back pain and was also treated for acute cough and shortness of breath. Beginning in September 2011, Plaintiff began seeing Dr. Craig Schmidt, M.D., for primary care. At the outset of treatment with Dr. Schmidt, she reported that her heart, sleep, and mental health conditions were controlled. Dr. Schmidt again saw Plaintiff in February of 2012 and in June 2012, when he noted recurrent angina pectoris, and determined that a cardiac catheterization was warranted. In October 2012, Dr. Schmidt noted uncertain hyperlipidemia, uncertain coronary artery disease with "some atypical chest pains," and controlled bipolar disorder. (Tr. 394.) In January of 2013, Dr. Schmidt noted "fair control" of Plaintiff's heart condition, with continued chest pain. (Tr. 390.) The chest pain occurred at "random times." *Id.* Plaintiff's insomnia had also returned. *Id.* Also in January of 2013, Dr. Schmidt issued an opinion that Plaintiff could sit less than two hours, and could stand/walk only about two hours. Moreover, Dr. Schmidt opined that

4

Plaintiff could lift and carry less than ten pounds frequently, ten pounds occasionally, and twenty pounds rarely. Dr. Schmidt opined that Plaintiff suffered from additional limitations with regard to twisting, stooping, bending, crouching, and climbing, and that "emotional factors contribute to the severity" of Plaintiff's limitations. (Tr. 370-71.) Finally, Dr. Schmidt opined that Plaintiff would be absent from the workplace twice per month.

Plaintiff has been treated by Dr. Brian Seeck, M.D., for coronary artery disease, hypertension, and chest pain. Plaintiff received a stent placement in 1997 and small vessel angioplasty in 2003. In April 2012, Dr. Seeck noted no chest pain and no dyspnea, but did note Plaintiff's episodes of angina in the preceding year. (Tr. 322.) Plaintiff's cardiac stress test results were normal, and an ECG was negative for ischemia. (Tr. 326.) On July 2, 2012, Plaintiff presented again to Dr. Seeck with complaints of recurrent chest pain, which she stated was brought on by stress and extreme temperatures. Dr. Seeck again diagnosed coronary artery disease, as well as hypercholesterolemia, benign hypertension, and transient ischemic attack. (Tr. 319.) On October 17, 2013, Plaintiff was seen by Dr. Kyle Ostrom, M.D. She described worsening and more frequent chest pain. (Tr. 376.) Dr. Ostrom also expressed that a cardiac catheterization was needed. (Tr. 378.)

At the request of the ALJ, Plaintiff was subjected to a consultative internal medicine evaluation by Alan Spivack, M.D., in April 2014. (Tr. 411-13.) Dr. Spivack noted Plaintiff's complaints with regard to her heart condition, fibromyalgia causing ambulatory

5

limitations and additional pain, elevated lipids, and generalized weakness. With regard to Plaintiff's occupational limitations, Dr. Spivack opined that Plaintiff could lift and carry up to ten pounds, could sit twenty minutes at a time for up to five hours total, stand fifteen minutes at a time for up to five hours total, and could walk fifteen minutes at a time for up to five hours total. He suggested additional limitations with regard to exposure to unprotected heights, moving mechanical parts, and extreme cold, heat, or vibrations; and, he suggested that Plaintiff should only occasionally be exposed to operating a motor vehicle, humidity, wetness, dust, odors, fumes, and pulmonary irritants. (Tr. 424-28.) Dr. Spivack opined that Plaintiff would not be able to travel to a workplace without the assistance of a companion. *Id.* at 429.

**Evidentiary Hearing of March 11, 2014**

Plaintiff testified that she complied with her prescribed regimens of medication except for a cholesterol medication which she stopped taking for a period in order to try a herbal remedy. She also testified that she has had some difficulty affording her prescribed medication.

Plaintiff testified that she last worked in March 2011 for a paint roller company, which work Plaintiff described as "hard physically." (Tr. 43.) Plaintiff sustained a back injury during that job, and after missing about ten days of work because of the injury, she was terminated. Plaintiff testified about several jobs she held prior to the alleged disability onset date. She also testified that in one recent job, she worked as a stacker and sorter of 8 and 16 mm film products, and testified that she left the job because she thought

6

she would be moving. She also testified that she "didn't know" if she would be capable of doing the job at the time of the hearing, if it was offered back to her; she testified that she enjoyed the job, and "was good at it." (Tr. 61.) Plaintiff also testified that she completed two semesters of college in 2011-2012.

Also testifying at the hearing was Delores Gonzalez, a vocational expert. Gonzalez testified that Plaintiff's past work included seven jobs that were classified as sedentary or light, including production assembler, press clipping cutter and paster, and film transferer. The ALJ then asked the vocational expert to assume a person of Plaintiff's age, education, and work experience, who is limited to light work with exertional limits including never climbing ropes, ladders or scaffolds; occasionally climbing ramps or stairs; and must avoid concentrated exposure to extreme cold, wetness, and humidity. The ALJ also suggested, in keeping with the exertional limits espoused by Dr. Schmidt and Dr. Spivack, that a sit/stand option would be required for the hypothetical individual. The ALJ also variously amended the hypothetical to include limited interaction with the public and to be limited to sedentary work. The vocational expert testified that the three positions named above would remain available to the hypothetical individual, even including all of the mentioned limitations. (Tr. 62-91.)

**ALJ's Decision of June 11, 2014**

The ALJ found that Plaintiff suffers from the severe impairment of coronary artery

7

disease.² The ALJ determined that Plaintiff's hyperlidimia is non-severe, and that there is no evidence that it results in any functional limitation. The ALJ gave "little weight" to Dr. Schmidt's opinions regarding Plaintiff's limitations, which she stated were not consistent with or supported by the evidence, including his own records. (Tr. 20.) The ALJ also gave Dr. Spivack's opinion little weight for the same reasons, and because she did not find his opinion testimony was consistent with the objective evidence.

The ALJ found that Plaintiff's fibromyalgia is not a medically determinable impairment because it was not established by appropriate medical evidence. Although Dr. Spivak identified positive tender points upon examination, the ALJ found that the rest of the record was not consistent with such a diagnosis because (1) Plaintiff took no medications for the impairment and (2) Dr. Spivak, as merely a consultative examiner, did not assess Plaintiff's condition and capacity over time as required by administrative regulation for a diagnosis supporting the impairment of fibromyalgia. However, the ALJ stated that while she did not consider Plaintiff's fibromyalgia a medically determinable impairment, she did consider it in formulating Plaintiff's residual functional capacity.

The ALJ cited the vocational evidence in rendering her decision. She noted that although Plaintiff was 54 years old at the alleged onset of disability, Plaintiff only reported

---

2 The ALJ also determined that Plaintiff suffers from a medically determinable mental impairment in her mood disorder, but that it does not cause more than minimal limitation in the claimant's ability to perform work activities and is therefore not severe. (Tr. 14.) Specifically, the ALJ explained that when an impairment is controlled with medication, it is not considered disabling, and that Plaintiff has taken lithium for her mood disorder for over 35 years, during which time she has enjoyed periods of gainful employment.

8

previous substantial gainful employment in the years 2001, 2005, and 2007-2010, which the ALJ interpreted to mean that "[Plaintiff] was generally not sustaining substantial gainful activity even before she alleges she was unable to do so and raises a question as to whether the claimant's continuing unemployment is actually due to medical impairments." (Tr. 18.) Moreover, the ALJ noted that Plaintiff received unemployment benefits in 2011 and 2012, which is inconsistent with an allegation of disability because it requires a claimant to attest to the ability to work. Finally, the ALJ noted that Plaintiff attended college in 2011 and 2012 for vocational training.

Thus, the ALJ determined that Plaintiff retained the RFC to perform past relevant work, including as a production assembler, press clippings cutter and paster, film transferor, and retail sales clerk. The ALJ found that the vocational expert's testimony was consistent with the information contained in the DOT, and was in accordance with the vocational expert's training and experience.

**<u>Arguments of the Parties</u>**

Plaintiff argues that the ALJ erred at step two of the sequential evaluation process, described below, by failing to find Plaintiff's hypertension a severe impairment. Plaintiff alleges that her hypertension—heralded by swings in blood pressure—causes migraines and transient ischemic attacks that are disabling. Plaintiff offers two arguments in support of her theory: first, that the ALJ erred by failing to discuss the purported opinion of consulting state-agency psychologist Dr. DeVore that Plaintiff's hyptertension was a severe impairment; and second, that the ALJ erred in failing to properly consider the

9

evidence of hypertension offered in the record generally. The ALJ chose to give little weight to Dr. Schmidt's opinion that Plaintiff would be absent from the workplace twice per month, or Dr. Spivack's opinion that Plaintiff would not be able to travel to a workplace without the assistance of a companion, because there was little medical evidence supporting such limitations. But Plaintiff suggests that the medical evidence of Plaintiff's hypertension lends support to those purported limitations, and that the ALJ erred by failing to properly consider that evidence.

In response, Defendant argues that Dr. DeVore did not opine that Plaintiff's hypertension was a severe impairment. Instead, according to Defendant, the initial determination in the evaluative report that hypertension was a severe impairment was made by SDM Ron Seligman, and that Dr. DeVore's contribution was limited to his analysis of Plaintiff's affective disorders. Defendant points out that a psychologist would not be asked to perform a physical evaluation. Moreover, Defendant argues that while an ALJ must fully and fairly develop the record, she is not required to discuss every piece of submitted evidence. And finally, Defendant argues that the record does not support a finding that Plaintiff's hypertension is a disabling impairment; Defendant posits that Plaintiff did not raise it as such at the administrative hearing, did not testify to any limitations caused by hypertension, and has not proffered medical records that thoroughly address purported symptoms of hypertension.

## DISCUSSION

### Standard of Review and Statutory Framework

In reviewing the denial of Social Security disability benefits, a court "must review the entire administrative record to 'determine whether the ALJ's findings are supported by substantial evidence on the record as a whole.'" *Johnson v. Astrue*, 628 F.3d 991, 992 (8th Cir. 2011). The court "'may not reverse . . . merely because substantial evidence would support a contrary outcome. Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citations omitted).

To be entitled to benefits, a claimant must demonstrate an inability to engage in substantial gainful activity which exists in the national economy, by reason of a medically determinable impairment which has lasted or can be expected to last for not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The Commissioner has promulgated regulations, found at 20 C.F.R. § 404.1520, establishing a five-step sequential evaluation process to determine disability. The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity. If so, benefits are denied. If not, the Commissioner decides whether the claimant has a severe impairment or combination of impairments, defined as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 416.920(c), 404.1520(c). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work."

*Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001)).

If the impairment or combination of impairments is severe and meets the duration requirement, the Commissioner determines at step three whether the claimant's impairment meets or is equal to one of the deemed-disabling impairments listed in Appendix I. If not, the Commissioner asks at step four whether the claimant has the RFC to perform his past relevant work. A disability claimant's RFC is the most he can still do despite his limitations. 20 C.F.R. § 404.1545(a)(1).

If the claimant can perform his past work, the claimant is not disabled. If he cannot perform his past relevant work, the burden of proof shifts at step five to the Commissioner to demonstrate that the claimant retains the RFC to perform work that is available in the national economy and that is consistent with the claimant's vocational factors—age, education, and work experience. *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010).

**<u>Weight Accorded Dr. DeVore's Opinion</u>**

The Court will first address whether the ALJ erred at step two of the sequential evaluation process by failing to find that Plaintiff suffered from the severe impairment of hypertension, based on the proffered diagnosis of Dr. Kyle DeVore. 20 C.F.R. § 404.1527 provides:

> [(a)(2)] Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you

> can still do despite impairment(s), and your physical or mental restrictions.
>
> (b) How we consider medical opinions. In determining whether you are disabled, we will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive.

*Id.*; *see also McCadney v. Astrue*, 519 F.3d 764, 767 (8th Cir. 2008) ("If the ALJ discounted [the] consultative examining opinion, it should explain why it did so."). However, "[a]lthough required to develop the record fully and fairly, an ALJ is not required to discuss every piece of evidence submitted." *Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010) (quoting *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998)). And "[a]n ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." *Id.* Additionally, the Commissioner's regulations provide that "because nonexamining sources have no examining or treating relationship . . . the weight we will give their opinions will depend on the degree to which they provide supporting explanations for their opinions." 20 C.F.R. § 404.1527(c)(3).

Here, the Court is not persuaded that Dr. DeVore—a psychologist—actually made any diagnosis with regard to Plaintiff's purported impairment of hypertension. It is unclear from the record whether that diagnosis was actually made by Dr. DeVore, or by Ron Seligman, the SDM assigned in the case. Dr. DeVore was a psychologist with expertise in affective impairments, and it is unlikely that he would have been in a position to determine whether Plaintiff's hypertension was a significant impairment, or that such a diagnosis by him would be particularly persuasive. The Court finds that Dr. DeVore's

classification of hypertension as a severe impairment is not a "medical opinion" as contemplated in 20 C.F.R. § 404.1527(b), and thus, the ALJ's failure to mention it is not reversible error.

**Evidence of Hypertension**

Next, the Court considers whether the ALJ properly weighed and considered the evidence of record in determining that hypertension was not a severe impairment. "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 20 C.F.R §§ 404.1520(c), 416.920(c). Being able to do basic work activities means having the abilities and aptitudes necessary to do most jobs, including physical functions; capacities for seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, coworkers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b); 416.921(b). Although severity is not an onerous requirement to meet, it is also "not a toothless standard." *Kirby*, 500 F.3d at 708.

A diagnosis of a given impairment does not, on its own, indicate that the impairment is severe. *Buckner v. Astrue*, 646 F.3d 549, 557 (8th Cir. 2011) ("[A]lthough [Plaintiff] was diagnosed with depression and anxiety, substantial evidence on the record supports the ALJ's finding that his depression and anxiety was not severe."). Although Dr. Seeck diagnosed Plaintiff with "benign hypertension," neither Dr. Schmidt nor Dr. Spivack

mention hypertension in their treatment notes. Nonetheless, Plaintiff argues that Dr. Schmidt's opinion that Plaintiff would be absent from the workplace twice per month, and Dr. Spivack's opinion that Plaintiff would not be able to travel to a workplace without the assistance of a companion, constitute evidence that Plaintiff's hypertension is a severe impairment. While Plaintiff's brief offers its own medical evidence—quotations from a medical reference book—that suggest migraines and ischemia can result from hypertension, the medical records submitted do not link Plaintiff's symptoms to hypertension. In fact, hypertension itself is mentioned only twice in the medical record—in Dr. Seeck's notes from April and July of 2012—wherein he makes his diagnosis of "benign hypertension."

Moreover, although the ALJ did not directly address whether the findings of the treating physicians support a severe impairment of hypertension, she did appropriately address the treating physicians' opinions regarding Plaintiff's physical limitations. In determining a claimant's impairment, an ALJ must give a treating physician's opinion controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record. *Davidson v. Astrue,* 578 F.3d 838, 842 (8th Cir. 2009); *Hacker v. Barnhart,* 459 F.3d 934, 937 (8th Cir. 2006); *Reed v. Barnhart,* 399 F.3d 917, 920 (8th Cir. 2005). However, the opinions of treating physicians "are not automatically controlling and the ALJ must evaluate the record as a whole." *Smith v. Colvin*, 756 F.3d 621, 625 (8th Cir. 2014). And "[w]hether the ALJ grants a treating physician's opinion substantial or little

weight, the regulations provide that the ALJ must 'always give good reasons' for the particular weight given to a treating physician's evaluation." *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000).

Here, the ALJ found Dr. Spivack's opinion as to Plaintiff's limitations was inconsistent with the rest of the record, including Plaintiff's work history and collection of unemployment benefits. *See Smith*, 756 F.3d at 625 ("Applying for unemployment benefits adversely affects credibility, although it is not conclusive, because an unemployment applicant must hold himself out as available, willing and able to work.") (internal citation and quotation marks omitted). The ALJ also found a lack of supporting objective medical evidence of impairment in Dr. Spivack's own records of treatment. Moreover, the ALJ found that Dr. Spivack's opinion appeared to be based on Plaintiff's subjective complaints. (Tr. 20.) The Eighth Circuit has held that an ALJ was justified in discrediting the opinion of a physician when it was based solely on the claimant's subjective complaints and was not supported by his other findings. *See, e.g., Cline v. Colvin*, 771 F.3d 1098, 1104 (8th Cir. 2014) ("Cline's lack of 'credibility regarding both the severity of her impairments and the limitations that they impose' also undermine Dr. Allen's statement, which expressly relied on Cline's subjective complaints of pain and discomfort.") (quoting *Kirby*, 500 F.3d at 709).

With regard to Dr. Schmidt's opinions, the ALJ noted that Dr. Schmidt saw Plaintiff only approximately four times a year. And again, while the ALJ did not specifically highlight as much, Dr. Schmidt's opinion was generally undermined by Plaintiff's work

16

history and collection of unemployment benefits, as well as a lack of objective medical evidence.

Although Plaintiff testified to migraines and episodes of ischemia, there is no objective evidence linking these issues to hypertension. Moreover, the ALJ specifically explained that he doubted the credibility of Plaintiff's subjective complaints as to the severity of the problems, because they were inconsistent with the preponderance of the evidence of record as a whole. As Defendant has pointed out, records from Dr. Seeck indicate that Plaintiff's systolic blood pressure was at or below 130/80 in eleven of fifteen readings during the relevant period (Tr. 319, 322, 332, 336, 338, 342, 351, 362, 364, 375, 392), and that Plaintiff had high blood pressure only four times. Dr. Seeck's own diagnosis—that Plaintiff's hypertension was "benign"—as well as the omission of hypertension-related limitations from the opinions of Dr. Spivack and Dr. Schmidt support the ALJ's determination that Plaintiff's hypertension is not a severe impairment. For these reasons, the ALJ's decision will be affirmed.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**.

*Audrey G. Fleissig*
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated on this 7th day of June, 2016.